**UNITED STATES of America, Appellee,**

v.

**Zaran DUNLOY, a/k/a "James Dennis Dunloy," Defendant-Appellant.**

**No. 1175, Docket 78-1174.**

United States Court of Appeals, Second Circuit.

Argued June 22, 1978.

Decided Sept. 5, 1978.

Roy M. Cohn, New York City (Saxe, Bacon & Bolan, P. C., New York City, H. Richard Uviller, New York City, of counsel), for defendant-appellant.

Minna Schrag, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Howard W. Goldstein, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before LUMBARD and MANSFIELD, Circuit Judges, and HOLDEN, Chief Judge.*

MANSFIELD, Circuit Judge:

Zaran Dunloy appeals from a judgment of the Southern District of New York, entered on May 3, 1978, after a jury trial before Judge Motley, convicting him of one count of unlawfully possessing cocaine with intent to distribute it, 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B). He was sentenced to serve two years imprisonment, three years special parole, and to pay a $5,000 fine. The principal issues raised on this appeal are the legality of a search of his safe deposit box containing cocaine and other incriminating evidence, the alleged exclusion of evidence bearing on his awareness of the presence of the cocaine in his box, and the trial judge's instructions on the subject of knowledge, willfulness and intent. We affirm.

On October 21, 1977, upon the application of Agent John E. Daniocek of the Drug

* Of the United States District Court for the District of Vermont, sitting by designation.

Enforcement Administration ("DEA"), U. S. Magistrate Kent Sinclair of the Southern District of New York issued a search warrant authorizing the Government to search Dunloy's safe deposit box at a branch of the Citibank at 28th Street and Fifth Avenue, New York City,[1] and to seize "a quantity of cocaine, and additionally, all narcotic drug controlled substances, documents, records and other evidence of distribution and possession with intent to distribute narcotic drug controlled substances." The warrant was issued on the basis of the following statement in Daniocek's supporting affidavit:

"The sources of your deponent's information and the grounds for his belief are information received from Special Agent Lyons of the Drug Enforcement Administration stationed in La Paz, Bolivia and received via teletype on October 20, 1977 including the following:

"(1) On October 18, 1977, officials in Bolivia arrested the following three persons who were then in possession of 1900 grams of cocaine; Ian Bruce Dundas ('Dundas'), a Canadian citizen with Canadian Passport # B0479456; Eugene Thomas Friedell, an American citizen with United States Passport # G197584; and Luis Alfredo Palomino Davila, a Peruvian citizen with Peruvian Passport # 5000885.

"(2) After his arrest, Dundas was interviewed by Special Agent Lyons and stated that he had purchased cocaine in Bolivia on previous occasions and delivered the said cocaine to James D. Dunloy ('Dunloy'), 120 West 28th Street, Apartment 3B, New York, New York.

"(3) On October 21, 1977, your deponent was advised by the superintendent of the building located at 120 West 28th Street, New York, that James D. Dunloy is a resident of Apartment 3B in that building.

"(4) Dundas further stated that on these previous occasions, the method of operation utilized was to purchase round trip tickets from New York to Curacao to New York, and separate round trip tickets from Curacao to Bolivia to Curacao, all of which tickets were provided by Dunloy.

"(5) Upon information and belief, no passports are required for entry to Curacao from the United States of America or re-entry to the United States of America from Curacao.

"(6) Dundas further stated that he had purchased cocaine in Bolivia on these previous occasions which he would take back to Curacao where the Curacao-Bolivia-Curacao tickets would be destroyed and his passport mailed home.

"(7) Dundas further stated that on these previous occasions the cocaine purchased in Bolivia was brought back into the United States concealed in a rubber raft and/or in oxygen tanks of the type utilized for scuba diving.

"(8) Dundas further stated that Dunloy keeps some of the cocaine which Dundas has delivered to him in a safety deposit box at the branch of the Chemical Bank located at 28th Street and Fifth Avenue, New York, New York.

"(9) Dundas stated that on one prior occasion, he saw approximately one kilogram of cocaine in the said safety deposit box.

"(10) On October 21, 1977, your deponent was advised by Mr. Casey, Assistant Manager of the said Chemical Bank that Dunloy had no safety deposit box at that bank; and your deponent was advised by Mr. Buckley, Assistant Manager of Citibank, located at 28th Street and Fifth Avenue, New York, New York, directly across the street from the said Chemical Bank, that Dunloy has a safety deposit box there which he has retained since October 31, 1975."

Upon executing the warrant on October 24, 1977, at the Citibank Branch at 28th Street and Fifth Avenue, Agent Daniocek

---

1. Although the bank was described by Dundas as a branch of the Chemical Bank at 28th Street and Fifth Avenue, it turned out to be a branch of Citibank across the street at the same intersection, where appellant maintained a safe deposit box.

seized the contents of the safe deposit box, which consisted of a brown paper bag containing approximately ½ kilogram of 81% pure cocaine, $26,763 in cash, two white boxes containing gold coins worth $17,205, a passport, two bank books, and various papers, including Dunloy's birth certificate, evidence that he had changed his name from James Dennis Dunloy to Zaran Dunloy and bank notices evidencing purchase of securities worth $95,000. Dunloy's apartment was located a short distance from the bank. On October 26, 1977, after a warrant had been issued for his arrest, he surrendered.

In a written opinion dated March 15, 1978, Judge Motley denied Dunloy's motion to suppress the seized items, which had been based principally on the claim that the supporting affidavit was insufficient because of the alleged unreliability, staleness, inadequacy and inaccuracy of the information furnished by Ian Bruce Dundas, the informant. Judge Motley found the evidence of Dundas' reliability to be sufficient, and the information furnished to be sufficiently detailed and corroborated, to credit his statement. She also concluded that his mistake in misnaming the bank was immaterial and that since Dundas described an on-going narcotics operation the information was sufficiently current to provide reasonable grounds for belief that there still was cocaine in Dunloy's safe deposit box on October 21, 1977, which turned out to be the case.

At trial the Government introduced the cocaine and other items found in the safe deposit box, including the large amount of cash, the other evidence of substantial wealth, and Dunloy's passport, which showed recent foreign travel, principally to Latin America. In addition it was established that Dunloy had visited the box once or twice a week prior to the execution of the search warrant and, upon finding it had been opened, stated that he was "in trouble" and fled the bank, despite a request by the manager to remain. Upon being interrogated after arrest he admitted that he had earned $5,000 in 1976 and virtually nothing in 1977.

Dunloy's defense was that he had been victimized by his close friend Dundas. Dunloy and his wife testified that upon Dundas' asking him to keep in his safe deposit box a paper bag containing valuables or stock certificates while Dundas was away on a trip, Dunloy and Dundas went to the bank where Dundas placed the bag in the box without Dunloy's ever touching it or seeing its contents. Dunloy further stated that, except for a $5,000 modelling fee belonging to his wife, the cash in the box was derived from his gem business, that his frequent visits to the box were occasioned by the same business, since he kept his gem inventory in the box when he was not showing the gems, and that an Iranian friend owned the $95,000 of securities purchased through the Royal Bank of Canada.

In rebuttal to Dunloy's testimony that he never touched the paper bag containing cocaine or saw its contents, Agent Daniocek testified that a bag containing $20,000 in U. S. currency (two plastic sealed packages of new $100 bills, each bound with a Federal Reserve Bank $10,000 wrapper) was stuffed in the rear of the box behind the cocaine bag. In order to put in or get to the cash supposedly connected with Dunloy's gem business, he would therefore have been required first to remove the bag containing the cocaine.

*Discussion*

Appellant first contends that the district court erred in not suppressing the evidence seized from his safe deposit box on the grounds that the affidavit in support of the search warrant, being based entirely on the hearsay statements of Dundas, was inadequate to establish probable cause for the search. Specifically, Dunloy attacks the affidavit for failure to furnish sufficient evidence of Dundas' reliability as an informant, *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and failure to meet the standards established by *Aguilar v. Texas*, 378 U.S. 108, 114–15, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), because it did not furnish sufficiently de-

tailed circumstances to provide a basis for believing Dundas' assertion that the cocaine and other incriminating evidence would be found in the box at the time it was searched. We find both arguments to be meritless.

■ Since Dundas was not a paid informant but an admitted "participant in the very crime at issue," the Government was not required "to show past reliability." *United States v. Rueda*, 549 F.2d 865, 869 (2d Cir. 1977). See also *United States v. Miley*, 513 F.2d 1191, 1204 (2d Cir.), *cert. denied*, 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 62 (1975); *United States v. Rollins*, 522 F.2d 160, 164 (2d Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976). His participation as an accomplice satisfied the reliability standard.[2] Moreover, the facts and circumstances furnished by Dundas and set forth in Daniocek's affidavit were sufficiently detailed and corroborated to establish probable cause to believe that Dundas was telling the truth and that an ongoing criminal enterprise involving smuggling and sale of narcotics, in which the safe deposit box was used for storage of cocaine, was in progress.

Dundas furnished, on the basis of his own personal observation, clear and specific details of the operation, including Dunloy's address, the location of the bank and safe deposit box, and the fact that Dunloy was then keeping cocaine in the box. Daniocek, moreover, personally corroborated the accuracy of some of the information received from Dundas by verifying Dunloy's address, the location of the bank, and the existence of the safe deposit box in Dunloy's name. Construing the affidavit as a whole and in a common sense fashion, as we are required to do, *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the information, far from being stale, appeared to be current. Such corroborated,

current, detailed information furnished sufficient grounds for Magistrate Sinclair reasonably to believe that there was cocaine in Dunloy's safe deposit box at the time when he issued the search warrant.[3] *Mapp v. Warden*, 531 F.2d 1167, 1171–72 (2d Cir. 1976); *United States v. Rollins, supra,* 522 F.2d at 165; *United States v. Canestri*, 518 F.2d 269, 272 (2d Cir. 1975).

■ For these reasons we hold that the search warrant was validly issued upon the basis of an adequate showing of probable cause.

■ Dunloy next contends, for the first time on this appeal, that both the language of the warrant and the scope of the search made in executing it violated the Fourth Amendment's requirement that warrants particularly describe the persons or things to be searched. The failure to assert this ground below operated as a waiver. Rule 12(f), F.R.Cr.P., *United States v. Rollins, supra,* 522 F.2d at 165. However, even assuming the district court would for good cause have relieved Dunloy from the effects of the waiver, the warrant, when viewed against the totality of the background facts, including the inability under the circumstances to provide a more precise description of the criminal instrumentalities that would be found in the box, was not impermissibly broad. Similar language has been upheld under comparable circumstances. See, e. g., *Andresen v. Maryland*, 427 U.S. 463, 479–82, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *United States v. Scharfman*, 448 F.2d 1352, 1355 (2d Cir. 1971), *cert. denied*, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972). In this case the breath of the warrant's language was tempered by the extremely confined area authorized to be searched—one safe deposit box. The warrant was no blank check permitting agents to roam throughout an en-

---

2. Under the federal rule an accomplice's uncorroborated testimony, although subject to strict and careful scrutiny, may nevertheless be sufficient alone to support a conviction. *United States v. Phillips*, 426 F.2d 1069, 1071 (2d Cir.), *cert. denied*, 400 U.S. 843, 91 S.Ct. 86, 27 L.Ed.2d 78 (1970).

3. In addition, of course, the determination of U. S. Magistrate Kent Sinclair was entitled to weight. *Mapp v. Warden, supra,* 531 F.2d at 1172; *United States v. Londono*, 553 F.2d 805, 810 (2d Cir. 1977).

tire house, or even a room, but a narrowly restricted permit which did specify some contraband items that were to be seized (e. g., the cocaine) and led to the seizure of others in plain view, such as the currency, coins, passport and confirmation slips, which was permissible, *Warden v. Hayden*, 387 U.S. 294, 300–10, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1966); *United States v. Rollins, supra*, 552 F.2d at 166. In any event, since any documents that may have been improperly seized were not introduced into evidence, Dunloy was not prejudiced.[4]

Dunloy next contends that he was denied a fair trial when the trial judge refused to permit him to explore fully what Dundas had told him regarding the contents of the bag eventually found to contain cocaine. Dunloy proposed to testify that before storing the package in Dunloy's box, Dundas had advised him that Dundas was going on a trip and had "some valuables he wanted to put in for safekeeping while on the trip." Anticipating an objection based on the ground that this evidence was hearsay, Dunloy's counsel argued that this testimony was admissible not to prove the truth of Dundas' statement but to show Dunloy's state of mind, but then confusingly cited as authority F.R.Evid. 803(1), (2) and (3).[5] Judge Motley initially ruled that the statement would be admitted to the extent that Dundas came to appellant's house and asked him to keep the package of valuables for him.

Dunloy then testified that Dundas came to his house, asked him "to hold a package of valuables," which they then deposited in Dunloy's box, without Dunloy ever touching the package or seeing the contents, and that Dundas told him "it was valuable documents . . . stock certificates and things like that." An objection to this characterization by Dundas of the contents was not ruled upon by the court except to the extent that in reviewing the testimony with the witness in the jury's presence the judge did not refer to the contents. In later testimony Dunloy again emphasized that he "didn't know there was cocaine in that envelope. My friend told me there were only valuables in it" and that Dundas had "said it was stocks" in the package. In summation Dunloy's counsel referred to the foregoing testimony in arguing that Dunloy was unaware of the contents of the package.

Although Dunloy's testimony as to what he had been told by Dundas regarding the contents of the package was inadmissible to prove the truth of the statement itself, since for that purpose it was hearsay, the testimony was clearly admissible to prove that the statement had been made, which was relevant to the material issue of whether Dunloy believed that the package contained valuables or securities rather than narcotics. To the extent that the trial judge indicated at one point that Dunloy would be limited to testifying that Dundas "left a package with him and . . . asked him to keep it for him while he went on a trip," this ruling out of the jury's presence, had it been adhered to by the court after the jury returned, would have been unduly restrictive, since Dunloy was

---

4. Personal papers having no relevance to issues before the court were not introduced. In any event the remedy with respect to any items exceeding the scope of the warrant would not have been invalidation of the search but suppression of those items. *Andresen v. Maryland*, 427 U.S. 463, 482 n.11, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

5. F.R.Evid. 803(1), (2) and (3) do not appear to be relevant. They provide:

   "(1) *Present sense impression.* A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

   "(2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

   "(3) *Then existing mental, emotional, or physical condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

entitled to recount any details tending to flesh out the basis for a belief on his part that the package did not contain contraband. The court's ruling, however, must be viewed in the context of Dunloy's subsequent testimony, which repeatedly described his understanding from Dundas as to the nature of the contents of the bag, without any instruction by the court that the testimony was to be disregarded. The jury, therefore, was adequately informed of the Dundas statement claimed to have been relied upon by Dunloy, and his counsel has failed to point to any material testimony that was excluded. Any error in the trial judge's initial ruling out of the jury's presence was therefore cured or rendered harmless by the admission into evidence, albeit in a confused fashion, of the essential testimony relied on by appellant. The jury's guilty verdict makes it clear that, in view of the extremely incriminating other evidence against Dunloy, including Agent Daniocek's testimony that Dunloy would have had to move the bag of cocaine in order to get at the $20,000 of currency in another bag, the jury simply did not credit Dunloy's testimony regarding Dundas' statement about the contents of the bag.

Appellant's final claim of error—that Judge Motley's instruction explaining to the jury that knowledge, willfulness and intent might be proved by circumstantial evidence diluted the constitutional requirement that these elements be proved beyond a reasonable doubt—borders on the frivolous. Aside from the fact that this contention was waived by failure to object to it at trial, the challenged instructions, when read in context, as we are required to do, *United States v. Gentile*, 530 F.2d 461, 469 (2d Cir.), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976), make it clear that the Government assumed the burden of proving these elements beyond a reasonable doubt.

The judgment of conviction is affirmed.