**UNITED STATES of America,**

v.

**Javier IPARRAGUIRRE, Defendant.**

**No. 85 CR 604.**

United States District Court,
E.D. New York.

Feb. 19, 1986.

Raymond J. Dearie, U.S. Atty. E.D.N.Y. (Steven M. Gold, Asst. U.S. Atty., of counsel), for plaintiff.

Roger J. Schwarz, New York City, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant moves to suppress evidence seized from his apartment. He argues first that the government, in obtaining the warrant to search the premises, did not comply with the provisions of Fed.R. Crim.P. 41(c)(2)(D). He also contends that the warrant was overbroad and not supported by probable cause. For the reasons stated below, the motion is denied.

*Facts*

The facts are not in dispute. On September 23, 1985, defendants Robert Aponte, Felix Torres, and Juan Rivera were arrested by agents of the New York Drug Enforcement Task Force while attempting to sell a kilogram of cocaine to an undercover officer. This transaction had been arranged by a confidential informant acting as middleman. Defendant Aponte stated that the source of the cocaine was a man who he knew as "Chile" and who lived at 110th Street in Queens, New York. All three of the arrested defendants were able to identify the house. At about 9:25 p.m. Aponte, under the supervision of the agents, called the residence in Queens and arranged to return with the money from the kilogram sale and to pick up a second kilogram.

Detective Kevin Schnupp of the Task Force then contacted the office of the United States Attorney in this District and spoke to Assistant United States Attorney ("AUSA") Gordon Mehler. AUSA Mehler telephoned United States Magistrate A. Simon Chrein to apply for a warrant to conduct a search of the second floor apartment at 107–73 110th Street in Queens. Magistrate Chrein granted the application. When Task Force detectives executed the warrant, they discovered quantities of cocaine, narcotics paraphernalia, records and weapons. Defendant Iparaguirre was then arrested.

*Discussion*

*Rule 41(c)(2)*

Fed.R.Crim.P. 41(c)(2) was enacted in 1977 "to establish a procedure for the issuance of a search warrant when it is not reasonably practicable for the person obtaining the warrant to present a written affidavit ..." Advisory Committee Note

to 1977 Amendment to Fed.R.Crim.P. 41. It provides that "[i]f the circumstances make it reasonable to dispense with a written affidavit, a Federal magistrate may issue a warrant based on sworn oral testimony communicated by telephone or other appropriate means." Fed.R.Crim.P. 41(c)(2)(A). The provision recognizes that under the fourth amendment and the Supreme Court cases interpreting it, "the preferred method of conducting a search is with a search warrant." Notes of Senate Committee on the Judiciary, Sen.Rep. No. 95–354, U.S.Code Cong. & Admin.News 1977, p. 527. Accordingly, the rationale of the rule "is to encourage Federal law enforcement officers to seek search warrants in situations when they might otherwise conduct warrantless searches." *Id.* In other words, by enabling them to take advantage of technology not yet invented at the time the Bill of Rights was drafted, the provision makes it feasible for officers in the field to comply with the law under the fourth amendment that a warrant ordinarily must be obtained before a search is conducted.

In the instant case, Detective Schnupp was in the field; in fact, at the time AUSA Mehler spoke to Magistrate Chrein, Detective Schnupp was standing with the defendant Aponte and the confidential informant in front of the residence for which the search warrant was sought. Because it was thus not practical to proceed by written affidavit, the agent contacted the United States Attorney's office to request that an AUSA obtain a search warrant by telephone. *See* Fed.R.Crim.P. 41(c)(2)(A)(C).

Fed.R.Crim.P. 41(c)(2)(D) provides that when a caller contacts a magistrate to procure a warrant, the "magistrate shall immediately place under oath each person whose testimony forms a basis of the application and each person applying for that warrant." The transcript of the September 23, 1985 application reveals that the only person to whom Magistrate Chrein spoke was AUSA Mehler, who was thus obviously the person applying for the warrant. AUSA Mehler identified himself as the affiant, and Magistrate Chrein swore him (Transcript of Oral Application for a Search Warrant September 23, 1985 ("Tr.") at 1).[1]

Defendant raises two objections to this procedure. First, he argues that Detective Schnupp was in fact the affiant, and that he was never sworn. Second, he argues that even if Schnupp was not the affiant, he was the person whose testimony formed the basis of the application and should have been sworn in that capacity.

Defendant bases his argument that Detective Schnupp was the affiant on an exchange between AUSA Mehler and Magistrate Chrein as they were filling out their respective copies of the warrant.[2] At that

---

**1.** Magistrate Chrein: Fine. Are you going to be the affiant?
AUSA Mehler: Yes I am.
Magistrate Chrein: Well then let me swear you. Mr. Mehler do you swear that the testimony that you're about to give in this proceeding will be the truth, the whole truth and nothing but the truth, so help you God?
AUSA Mehler: Yes I do.

**2.** The Rule providing for the issuance of a warrant upon oral testimony states that the magistrate shall complete a document called the original warrant, and that the applicant shall complete a duplicate original warrant:

(B) *Application.* The person who is requesting the warrant shall prepare a document to be known as a duplicate original warrant and shall read such duplicate original warrant, verbatim, to the Federal magistrate. The Federal magistrate shall enter, verbatim, what is so read to such magistrate on a document to be known as the original warrant. The Feder-

al magistrate may direct that the warrant be modified.

(C) *Issuance.* If the Federal magistrate is satisfied that the circumstances are such as to make it reasonable to dispense with a written affidavit and that grounds for the application exist or that there is probable cause to believe that they exist, the Federal magistrate shall order the issuance of a warrant by directing the person requesting the warrant to sign the Federal magistrate's name on the duplicate original warrant. The Federal magistrate shall immediately sign the original warrant and enter on the original warrant the exact time when the warrant was ordered to be issued. The finding of probable cause for a warrant upon oral testimony may be based on the same kind of evidence as is sufficient for a warrant upon affidavit.

Fed.R.Crim.P. 41(c)(2)(B), (C).

time, both stated that the name to be filled in as the affiant was Kevin Schnupp. If Detective Schnupp had in fact been the affiant, the warrant would be defective because Schnupp was never sworn.

It is manifest, however, that Detective Schnupp was not the affiant. At the outset of the conversation, Magistrate Chrein swore AUSA Mehler as the affiant (Tr. 1). Moreover, the Magistrate could hardly have thought that anyone other than AUSA Mehler was the affiant or the applicant, because AUSA Mehler was the only one to whom he spoke. In fact, at the time he granted the warrant application, Magistrate Chrein was aware that Detective Schnupp was standing outside the residence in Queens, awaiting the warrant (Tr. 2).

■ It was thus obvious to all parties involved that AUSA Mehler, not Detective Schnupp, was the affiant. In such a case, the fact that Magistrate Chrein and AUSA Mehler mistakenly filled in Schnupp's name on the warrant does not require suppression of the fruits of the search. The oath "is designed to ensure that the truth will be told by insuring that the ... affiant will be impressed with the solemnity and importance of his words." *United States v. Turner*, 558 F.2d 46, 50 (2d Cir.1977). To argue that the erroneous entry of Detective Schnupp's name on the warrant means that he should have been sworn is to ignore the rationale of the oath requirement that the person communicating with the Magistrate be aware of the seriousness of the proceedings. Here the person communicating with the Magistrate—AUSA Mehler— was sworn, and therefore the warrant was not deficient in that respect.

Defendant's other objection under Rule 41 is that Detective Schnupp should have been sworn in his capacity as a "person whose testimony forms a basis of the application." Fed.R.Crim.P. 41(c)(2)(D). Defendant focuses on the word "basis" and argues that because Schnupp had personal knowledge of the facts underlying the application, he supplied the basis, and there-

fore should have been sworn. The proper focus, however, is on the word "testimony." Rule 41(c)(2)(D) does not require the swearing of every individual with knowledge of the investigation; rather, it requires the swearing of the applicant and of any witness who actually testifies before the issuing magistrate. *See* Notes of the Senate Committee on the Judiciary, Sen. Rep. No. 95–354 ("Subparagraph (c)(2)(D) [of Rule 41] requires the magistrate to place the requestor and any witness under oath ..."). If there is no witness, obviously only the applicant need be sworn, as he was here.

■ The gist of defendant's objection appears to be that the warrant issued upon "hearsay-type information imparted by a government attorney" (Defendant's Memorandum of Law at 3). Aside from the fact that this precise situation is envisioned by Rule 41, *see* 1977 Amendment Advisory Committee Note (the "information may come ... from the attorney for the government ..."), it has been consistently held that a search warrant may properly issue "upon a finding of probable cause based on hearsay," Advisory Committee Note to 1972 Amendment to Fed.R.Crim.P. 41, and that an affiant's statements need not reflect his own direct personal observations, as long as the magistrate is informed of the underlying circumstances supporting the affiant's conclusions, *see, e.g., McCray v. State of Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967); *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). In short, the fact that the warrant was based on AUSA Mehler's hearsay statements as to what Detective Schnupp had told him does not itself invalidate the search.[3] *Cf. Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983) ("affidavit relying on hearsay 'is not to be deemed insufficient on that score ...'") (quoting *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)). Whether the hearsay on which

---

**3.** Defendant does not appear to challenge the    reliability of Detective Schnupp.

Detective Schnupp[*] based his statements was sufficiently reliable to support the finding of probable cause is the subject of defendant's second contention.

## Probable Cause

Defendant argues that the warrant, even if issued in compliance with Rule 41, was overbroad and not supported by probable cause. "The traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d. 697 (1960)." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983).

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 2332.

■ Defendant's main argument against a finding of probable cause in these circumstances is that although AUSA Mehler presented Magistrate Chrein with information about the reliability of the confidential informant who introduced the undercover agent to defendant Aponte, the Magistrate was provided with nothing regarding the reliability of Aponte himself. It is the law of this Circuit, however, that when a declarant is "not a paid informant but an admitted 'participant in the very crime at issue,' the government [is] not required 'to show past reliability.' *United States v. Rueda*, 549 F.2d 865, 869 (2d Cir.1977).... His participation as an accomplice satisfie[s] the reliability standard." *United States v. Dunloy*, 584 F.2d 6, 10 (2d Cir. 1978).

■ Moreover, Magistrate Chrein had good reasons to believe that Aponte was telling the truth. First, as the government points out, Aponte had been recently arrested and probably had not "had an opportunity to concoct a false story consistent with [everything] that had transpired up to that point" (Government's Memorandum in Opposition at 11). Further, a defendant who has just accepted an offer to cooperate with the authorities is trying to win their favor and thus is unlikely to tell a lie about his source that will cause them to waste time chasing down a false lead.

In addition, the address of the house to which Aponte took the agents was confirmed by defendants Torres and Rivera, and the phone number Aponte dialed was also verified independently. Finally, although the phone call to the defendant was not recorded, Aponte's part of the conversation—which was overheard by the agents—was consistent with what Aponte had told the confidential informant *before* Aponte was arrested: that the two kilogram deal was going to take place in parts and that Aponte would return to the Queens residence with the money for the first kilogram and would pick up the second kilogram at that time. Thus, based on the totality of the circumstances, Magistrate Chrein was more than justified in relying on Aponte's statements.

■ Defendant also attacks the warrant as overbroad. He argues that even if there was probable cause to search the apartment for the second kilogram of cocaine, there was no reason to believe that the search would reveal "narcotics paraphernalia, books and records pertaining to narcotic trafficking, currency [or] other fruits of narcotics trafficking," for all of which the warrant authorized the agents to search. I disagree.

Magistrate Chrein was aware that Aponte had obtained the first kilogram of cocaine from the apartment and that the second kilogram was to be picked up from the same place. This alone might justify the inference that the apartment was a drug storage facility or stash pad and

would therefore contain tools, records and fruits of narcotics transactions. In addition, Aponte was arrested along with two guards who were following the confidential informant's car to ensure that the deal went smoothly. The fact that defendant had at least three people working for him further supports the inference that defendant was a drug source of some consequence and that his apartment was likely to contain paraphernalia of that trade. Thus there was ample probable cause to search for all the items listed in the search warrant.[4]

Accordingly, for the reasons stated above, the motion to suppress is denied.

SO ORDERED

---

4. Even if the warrant were overbroad or not supported by probable cause, the seized evidence would not be suppressed because the search was conducted in good faith reliance on a warrant issued by a neutral and detached magistrate. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. Fama,* 758 F.2d 834 (2d Cir.1985).