**1350**

UNITED STATES of America

v.

Arif Hamadeh KHALIL, a/k/a "Abu Hamadeh," Defendant.

No. S 86 Cr. 177 (EW).

United States District Court, S.D. New York.

May 10, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Maria T. Galeno, Asst. U.S. Atty., of counsel.

Valerie S. Amsterdam, New York City, for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

Arif Hamadeh Khalil is charged in a three-count superseding indictment with conspiracy to import, distribute and possess with intent to distribute heroin and with distribution of approximately 1,957 grams of heroin. Khalil moves pursuant to Fed.R.Crim.P. 12 and 41 to suppress property seized from his hotel room pursuant to a search warrant issued and executed after his arrest on February 13, 1986. Khalil contends that the property seized from his hotel room at the Sheraton Squire Hotel in New York City[1] should be suppressed because the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence unreasonable and because the warrant failed to particularize the items to be seized.

Khalil, a Syrian national, was arrested by Drug Enforcement Administration ("DEA") agents on February 13, 1986, four days after his entry into the United States. On that same day, Sami Annabi, Maysoun Annabi, and eleven other defendants were convicted in this Court of conspiracy to violate federal narcotics laws. The trial evidence established that the convicted defendants were members of an international

---

1. The property seized includes an airline ticket, hotel receipts, an International Transportation of Currency report, a business card, and documents in French and Arabic.

heroin operation that imported heroin into the United States from Syria, Jordan and Lebanon.[2] Testimony also established that a man identified as "Abu Hamadah" supplied the Annabis with heroin from outside the United States. The government contends that the supplier was the defendant herein, Arif Hamadeh Khalil, also known as "Abu Hamadeh."

Khalil arrived in the United States on February 9, 1986. Between that date and his arrest four days later, he met with undercover DEA agents and, among other matters, stated during the course of conversations that he was the source of supply of five pounds of heroin that an undercover agent had received from an individual two weeks earlier and arranged to receive payment for that sale.

In the affidavit supporting the search warrant, DEA Special Agent Richard Musso swore that Khalil had conversations with an undercover DEA agent in which Khalil stated that he had supplied the Annabis with 46.5 kilograms of heroin, that he had received approximately $900,000 in cash from Sami Annabi for the heroin but that he was owed an additional $1,000,000, and that he planned to try to collect the balance from Sami Annabi's father and wife. According to Musso's affidavit, Khalil also told the undercover agent that he had supplied narcotics to sky marshals who had previously been arrested.

The affidavit submitted in support of the search warrant further alleges that in an interview with Assistant United States Attorney John McEnany after his arrest, Khalil, after being advised of his constitutional rights, identified himself as a participant in a telephone conversation with Sami Annabi which had been recorded by the government pursuant to a court-ordered wiretap. Sami Annabi had testified at his trial that he was speaking to "Abu Hamadah" in that telephone conversation; Abu Hamadah was identified at the Annabi trial by one of Annabi's co-conspirators as the supplier for Annabi's heroin operation.

The warrant affidavit also states that Khalil told AUSA McEnany that he had substantial sums of money and his passport in a box at the hotel. Although upon inquiry at the hotel it appeared that there was no security box registered in Khalil's name, Musso swore in his affidavit that based on his experience in this and other cases, "it is likely that the defendant at least has lists of names and addresses and telephone numbers of his associates and contacts in this country and overseas at the hotel" and that "such information is likely to constitute important evidence of the scope of [Khalil's] heroin operations."[3] The search warrant was issued by Magistrate Naomi Reice Buchwald on February 14th, the day after Khalil was arrested.

Probable cause is a "practical, nontechnical conception."[4] Khalil's statements to the undercover agent regarding a recent drug transaction and his intention to collect money he was owed for heroin he had supplied to the Annabis and to an undercover agent and his statements to the Assistant United States Attorney, combined with the evidence elicited at the prior trial and Special Agent Musso's expert opinion,[5] were more than sufficient to es-

---

**2.** *United States v. Nersesian,* S 84 Cr. 1034 (JES).

**3.** Defendant's counsel argued that because the affidavit does not state the number of years of experience Musso had as a DEA agent, his statements should be considered merely speculative. Even if one assumes that a specified number of years of experience as a DEA agent is required to formulate a reasonable belief that an alleged international heroin supplier would have documents in his hotel room constituting evidence of narcotics transactions, in this case, according to counsel for the government, the agent appeared before the magistrate issuing the warrant. If the magistrate entertained any reserva-

tions about the nature or extent of the agent's experience she was free to inquire at that time.

**4.** Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). *See also* Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); United States v. Ginsberg, 758 F.2d 823, 828 (2d Cir.1985).

**5.** *See United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985) (citing cases holding that agent's expert opinion is important factor to be considered by judge reviewing warrant application).

tablish by a fair probability that Khalil's only known "residence" in the United States, his hotel room, would contain narcotics or evidence of narcotics transactions, including documents and money. Applying the "totality of the circumstances" standard enunciated by the Supreme Court in *Illinois v. Gates*,[6] the Court concludes that probable cause existed to issue the search warrant.

The Court's finding that the warrant was supported by probable cause makes it unnecessary to reach the question raised by defendant of whether the agents had a good faith belief that the allegedly defective warrant issued by a detached and neutral magistrate was valid.[7] The Court notes, however, that even if the magistrate had erroneously determined that probable cause existed, there is no basis for concluding that the warrant affidavit was " 'so lacking in probable cause as to render official belief in its existence entirely unreasonable.' " [8]

■ At oral argument, defendant requested an evidentiary hearing pursuant to *Franks v. Delaware*,[9] upon a claim that the agent's affidavit intentionally or recklessly misstated that Khalil's passport was in a box at the hotel when, in fact, it was in the possession either of the government or of a confidential government informant at the time of Khalil's arrest. A careful reading of the affidavit does not support a finding that the agent intentionally or recklessly disregarded the truth. The affidavit states that Khalil told the Assistant United States Attorney that his passport was in a box at the hotel. The affiant acknowledged that no security boxes were registered in Khalil's name and stated that to his knowledge, no passport was found on Khalil at the time of his arrest. Defendant has failed to show by affidavit or otherwise that any of these statements are false.[10] At most, defendant's assertions support a conclusion that the agent was negligent in failing to ascertain the precise location of the passport before seeking the search warrant. As the Supreme Court stated in *Franks*, "[a]llegations of negligence or innocent mistake are insufficient" to warrant an evidentiary hearing.[11] Finally, even if the agent's statements concerning Khalil's passport are disregarded, the warrant affidavit contains sufficient factual allegations to support a finding of probable cause and, therefore, a hearing is not required.[12] Defendant's application for an evidentiary hearing is denied.

■ Khalil also moves to suppress the evidence seized from his hotel room on the ground that the warrant failed to particularize the items to be seized. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause ... particularly describing ... the persons or things to be seized." The requirement that warrants be particularized "prevents the issuance of general warrants by insuring that a search extends no further than is necessary to find the objects listed in the warrant." [13]

---

**6.** 462 U.S. 213, 230, 103 S.Ct. 2317, 2327, 76 L.Ed.2d 527 (1983).

**7.** *See United States v. Leon*, 468 U.S 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**8.** *Id.* 104 S.Ct. at 3422 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975)).

**9.** 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

**10.** Allegations of falsehood must be accompanied by an offer of proof. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfacto-

rily explained." *Id.* 438 U.S. at 171, 98 S.Ct. at 2684.

**11.** *Id.*

**12.** *See id.* 438 U.S. at 156, 171–72, 98 S.Ct. at 2676, 2684–85; *see also United States v. Figueroa*, 750 F.2d 232, 237 (2d Cir.1984); *United States v. Mankani*, 738 F.2d 538, 545 (2d Cir. 1984); *United States v. Orozco-Prada*, 732 F.2d 1076, 1089 (2d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984); *United States v. Barnes*, 604 F.2d 121, 152–53 (2d Cir. 1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980).

**13.** *United States v. $10,000 in U.S. Currency*, 780 F.2d 213, 216 (2d Cir.1986).

The warrant signed by Magistrate Buchwald described the property to be seized as:

> Narcotics, the residue of narcotic drug controlled substances, narcotics paraphernalia, documents, records, photographs, money and other valuables which are evidence of or which constitute the fruits of the offenses of conspiracy to distribute, distribution, and possession with intent to distribute narcotic drug controlled substances, in violation of 21 U.S.C. sections 841(b)(1)(A), 841(b)(1)(B) and 846, as well as property designed and intended for use and which is being and has been has been used as the means of committing these offenses.

While the warrant not only authorized the executing officers to seize narcotics, narcotics paraphernalia and other specified items, but also other property used to commit the enumerated narcotics offenses, it was not a general warrant and it meets this Circuit's standards for particularity.[14] Accordingly, defendant's motion to suppress the evidence seized from room 1636 of the Sheraton Squire Hotel is denied.

Defendant's motion for an order authorizing defendant to employ the services of a voice analyst pursuant to the Criminal Justice Act for the purpose of analyzing the government's tape recordings of telephone conversations is granted without opposition.

So ordered.

---

**14.** *See, e.g., United States v. Young,* 745 F.2d 733, 758–60 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *United States v. Mankani,* 738 F.2d 538, 546 (2d Cir.1984); *United States v. Dunloy,* 584 F.2d 6, 10–11 (2d Cir.1978).