**UNITED STATES of America,**
**Appellee,**

v.

**Jey SONG, Defendant–Appellant.**

**Docket No. 05–1802–CR.**

United States Court of Appeals,
Second Circuit.

Submitted: Jan. 13, 2006.

Decided: Jan. 27, 2006.

Lee Greenstein, Law Office of Lee Greenstein, Albany, NY, for Defendant–Appellant.

Edward P. Grogan, Assistant United States Attorney (Glenn T. Suddaby, United States Attorney for the Northern District of New York, Robert P. Storch, Assistant United States Attorney, on the brief), United States Attorney's Office for the Northern District of New York, Albany, NY, for Appellee.

Before: CABRANES and SACK, Circuit Judges, and AMON, District Judge.*

JOSÉ A. CABRANES, Circuit Judge.

Defendant Jey Song appeals from a judgment of conviction, signed March 15, 2005, after a jury found him guilty of one count of transporting an illegal alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 18 U.S.C. § 2. The District Court sentenced Song principally to a term of fifteen months' imprisonment and three years' supervised release.

On appeal, Song contends that the District Court (1) abused its discretion in excluding as hearsay certain statements that Song sought to include during his testimony—namely, instructions he received from an unnamed "manager" and his assistant, "Mrs. Kim," on the day of his arrest; (2) denied Song a fair trial by admitting into evidence "irrelevant and prejudicial" testimony by government

---

* The Honorable Carol B. Amon, United States District Judge for the Eastern District of New York, sitting by designation.

agents, as well as related statements during the Government's summation, regarding the alleged notoriety of the area where Song was arrested as a site for illegal entry into the United States; and (3) erred in imposing an "excessive" sentence that not only failed to take into account certain "ameliorating and positive factors that existed in Song's favor," but also improperly punished him for failing to cooperate with the Government.

■■■ We address here Song's most significant argument on appeal—namely, that the District Court erred when it precluded Song from testifying as to certain statements made to him by the "manager" and Mrs. Kim, who allegedly had hired Song to serve as a tour guide after he had responded to an advertisement on a Korean language website seeking "drivers" for an unspecified purpose. As a preliminary matter, we agree that much or all of the excluded testimony was not in fact hearsay, inasmuch as the challenged statements were offered not for the truth of the matters asserted, but rather, to demonstrate the motivation behind Song's actions, which were taken in response to the assertedly *false* statements made to him by the "manager" and Mrs. Kim. *See United States v. Puzzo*, 928 F.2d 1356, 1365 (2d Cir.1991) (concluding that excluded testimony "apparently was not offered for the truth of the matters asserted" where "the conversations ... would assertedly have established that [the defendant] had been duped ... into thinking he would be carrying back a package of gold jewelry, not cocaine"); *United States v. Dunloy*, 584 F.2d 6, 11 (2d Cir.1978) ("Although [defendant's] testimony as to what he had been told by [his friend] regarding the contents of [a] package [later found to contain cocaine] was inadmissible to prove the truth of the statement itself, since for that purpose it was hearsay, the testimony was

clearly admissible to prove that the statement had been made, which was relevant to the material issue of whether [defendant] believed that the package contained valuables or securities rather than narcotics.").

Despite this error, we conclude that Song's explanation for his activities on the day of his arrest—namely, that he was an innocent tour guide who had been deceived into traveling to the Canadian border to pick up what he believed to be a group of tourists—was adequately presented to the jury, and thus the erroneous exclusion of the challenged testimony did not affect Song's "substantial rights." *See* Fed. R.Crim.P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). In addition to Song's written statement to law enforcement on the day of his arrest, which indicated that Song expected to "pick[ ] up tourists and show[ ] them sightseeing," the jury was also permitted to consider Song's testimony at trial, much of which conveyed, without objection by the Government, the alleged instructions Song had received from the "manager" and his assistant as they directed Song through various parts of upstate New York until he unwittingly arrived at the Canadian border. *See, e.g.,* Trial Tr. at 265 ("Initially, there was another driver who would work for them, but he wasn't able to do so; therefore, the manager asked me to do the job."); *id.* at 266 ("It's ... common for a change of plans in terms of tourism. Therefore, yes, the plan was changed from what I was originally told to do ...."); *id.* at 268 ("When I was near Champlain or I–87 ... I was told to go to Roxham Road."). Although it is certainly the case that Song was unable to convey the entirety of the instructions he had received from his handlers, Song was nevertheless permitted to testify in relatively great detail as to his

state of mind as he continued traveling toward the Canadian border:

Q: Now, during this conversation when the terms changed, what did you say?

A: Well, first, I was thinking of my own business schedule. They continued to be telling me how desperate they were and the car was already rented and I was driving. I had a difficult time saying no.

. . . .

Q: What were your reasons [for] going further north to Watertown[?]

A: I was angered while I was waiting for them at . . . Watertown, first, because they didn't keep their promise. So at that point I had to choose to either follow through and carry out what I was going to do, or go back and just attend [my] own business trip. However, I was in [a] dilemma because . . . if I chose to go back, it would be a waste of time for me and [a] waste of money. . . . So I was debating whether I should go back. . . . So . . . if I choose to pick them up and then take them to . . . New York City as I was supposed to, then I figure that I . . . still . . . could make the money and make the profit and still follow through with my business plan.

. . . .

A: I was also thinking of the fact that they were desperate of the driver. I couldn't ignore that fact. There-

fore, I had decided to . . . give the ride to those people.

Trial Tr. at 266–68. Accordingly, because Song was permitted to testify in sufficient detail as to his theory of the case, and because the Government presented overwhelming evidence that Song had acted with "reckless disregard" of the undocumented or illegal status of his alien passenger,[1] we conclude that the District Court's error in excluding the challenged evidence was harmless. See Puzzo, 928 F.2d at 1366 ("Although the district court erroneously cut short some questioning the responses to which would not have been hearsay, [defendant] was ultimately able to testify, and his counsel to argue, in support of the theory that [his accomplice] had misled [him] . . . ."); United States v. Lawal, 736 F.2d 5, 9 (2d Cir.1984) (erroneous exclusion of state of mind evidence harmless because "the jury was fully apprised, through the unchecked testimony of the agents, of the major aspects" of the defendant's claim); Dunloy, 584 F.2d at 12 ("Any error in the trial judge's initial ruling . . . was . . . cured or rendered harmless by the admission into evidence . . . of the essential testimony relied on by appellant.").

\*　　\*　　\*　　\*　　\*　　\*

We have carefully considered defendant's remaining arguments and find each of them to be without merit. Accordingly, for the reasons stated above, the judgment of the District Court is hereby AFFIRMED.

---

1. In addition to relying on the surveillance videotape recording Song's arrival at the border and his subsequent flight from the scene after picking up his passenger, the jury, in finding Song guilty, could also have justifiably relied on the implausibility of Song's explanations for his behavior, which the District Court later deemed "incredible" and "fabri-

cated." See United States v. Torres, 901 F.2d 205, 240 (2d Cir.1990) (erroneous exclusion of proffered testimony harmless where "[t]he evidence of [defendant's] guilt was strong, [another witness] was allowed to testify concerning the planned outing to the beach, and the excluded testimony was inherently implausible").