UNITED STATES of America,
Appellant,

v.

Marilyn BUCK, Defendant-Appellee.

No. 755, Docket 86–1500.

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1987.
Decided March 10, 1987.

Kerri L. Martin, Asst. U.S. Atty., S.D. N.Y. (Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., James L. Kainen, Stuart E. Abrams, Asst. U.S. Attys., of counsel) for appellant.

Judith L. Holmes, New York City (Holmes & Tipograph, New York City, Jill Elijah, of counsel), for defendant-appellee.

Before LUMBARD, KEARSE, and PRATT, Circuit Judges.

LUMBARD, Circuit Judge:

The United States appeals from two pretrial orders entered in the Southern District of New York on October 24 and December 3, 1986 by Judge Charles S. Haight, Jr. These orders suppressed physical evidence seized pursuant to a search warrant at an apartment rented by the defendant, Marilyn Buck, in East Orange, New Jersey, on the ground that the warrant violated the particularity requirement of the Fourth Amendment. Although we believe that the search warrant was impermissibly broad, we do not believe that the evidence seized should be suppressed. In view of the circumstances under which the law enforcement officers were compelled to conduct their investigation, we believe that they acted in good faith and in reasonable reliance on the warrant in conducting their search. Accordingly, we reverse the orders of the district court.

## I.

An April 14, 1984 indictment in the Southern District charged Buck in eight counts with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, and with participation in a racketeering enterprise, in violation of 18 U.S.C. §§ 1961, 1962(c), 1962(d) and 2. The indictment further charged Buck with bank robbery, armed bank robbery and murder during the commission of an armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2113(e), respectively. These charges stemmed from an armored car robbery in the Bronx on June 2, 1981, during which a Brinks security guard was killed. In addition, the indictment charged Buck with bank robbery, armed bank robbery and murder during the commission of an armed bank robbery, in violation of the same statutes, arising out of another armored car robbery in Nanuet, New York, on October 20, 1981, during and immediately after which a Brinks guard and two police officers were killed. Buck is currently incarcerated, serving sentences imposed on her as a result of convictions on other, unrelated charges.

The facts giving rise to Buck's suppression motion are as follows. In the late afternoon of October 20, 1981, at a busy shopping mall in Nanuet, New York, a number of men wearing ski masks emerged from a red van and began firing an M–16 machine gun at guards unloading a Brinks armored car, killing one guard and injuring another. The gunmen quickly gathered $1.6 million from the armored car and sped off in the van.

Shortly thereafter, a local resident told the police that he saw the gunmen transfer themselves, the apparent proceeds of the robbery, and their weapons to a U–Haul truck. The local police located the U–Haul as it was attempting to enter the New York Thruway. When the police stopped the U–Haul to question its occupants, several men burst from the back of it and began firing automatic weapons at the police. The gunmen killed two officers and injured a third. Eyewitnesses saw the gunmen flee the shoot-out in several cars and proceed to a nearby driveway, which served as another switch point. There witnesses saw the gunmen drive off in several other cars, including a white Oldsmobile bearing the New Jersey license plate 594 PJV. The police were unable to catch the white car as it sped away, but, later that evening, they traced the license plate to one "Carole J. Durant," at 166 Grove Street, North Plainfield, New Jersey.

Working through the night, the local police enlisted the assistance of the New Jersey State Police in tracking down the "Durant" automobile. At about 3:30 a.m. the next morning, New Jersey State Police officers went to 166 Grove Street. They spoke to the resident, Leonard Tosto, who told them that he knew "Carol Durant" but that she did not live there. He said that "Durant" had asked him to allow her to register her car at his address "for insurance purposes," and that she really lived at 223 Prospect Street, Apartment 1A, East Orange, New Jersey. "Durant," police later learned, was actually one of Marilyn Buck's several aliases. Tosto further told the officers that "Durant" had called him in the late afternoon of October 20—the date of the robbery and murders in Nanuet—and had told him that she had been in an automobile accident and that, if the police were to question him about her, Tosto should tell them that she lived in New York at an unknown address.

After the officers drove Tosto to 223 Prospect Street and he verified that building as "Durant's" residence, the New Jersey police officials decided to seek a search warrant for the residence. Shortly after 6:00 a.m., Detective Richard Ryan of the New Jersey State Police telephoned Judge Julius Fielo of the East Orange Municipal Court, at the Judge's home, to apply for a search warrant for "Durant's" apartment at 223 Prospect Street. At the beginning of the conversation, which was tape-recorded by the state police, Ryan gave a brief description of the crime in Nanuet. Judge Fielo then told Ryan to "give me some factual basis ah, indicating as to how you've come to know that this vehicle is involved with that crime." Ryan then in-

formed Judge Fielo of the fleeing white car, the tracing of the car registrant to Tosto's residence, and the questioning of Tosto. Ryan also recounted Tosto's version of why "Durant" registered the car at his address and her phone call to him the previous day.

At about 6:45 a.m., Judge Fielo administered an oath to the detective over the phone and then orally authorized a search of the premises at 223 Prospect Street. The warrant stated, as Fielo dictated it over the telephone, "Bench warrant issued verbally to Richard Ryan, on phone, to search premises 223 Prospect Street, East Orange, New Jersey, Apartment 1A, and to search person of Carol Durant and search warrant to seize any papers, things or property of any kind relating to previously described crime." Ryan and other New Jersey police officers went immediately to 223 Prospect Street and executed the search warrant. Among the items the police found in Buck's unoccupied apartment were the following: a .45 caliber semi-automatic rifle, a 9 mm. handgun, a Bowie knife, a blow gun, chuka sticks, ammunition, gun-cleaning kits, a sawed-off shotgun barrel and butt, wigs, a false mustache and make-up kit, insurance documents relating to the white Oldsmobile, numerous detailed bomb-making diagrams, a bomb-detonating device and several household items which the diagram indicated would be of use in making a home-made bomb.

Buck moved to suppress the evidence seized during the search on a variety of grounds. In an opinion filed October 24, 1986, Judge Haight rejected Buck's claims that there was inadequate probable cause for the search; that the issuing judge abandoned his "detached and neutral role;" that New Jersey law required suppression; and that a *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), hearing should have been held. Judge Haight agreed, however, with Buck's claim that the warrant was unconstitutionally broad. Accordingly, Judge Haight suppressed the fruits of the search, finding that Judge Fielo's orally-issued order lacked the "particularity" required by the Fourth Amendment. The Government moved for recon-

sideration. In a second opinion, decided December 3, 1986, Judge Haight reaffirmed his earlier ruling. This appeal followed.

## II.

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized.*" (emphasis added)

Our first task is to determine whether the warrant was, as Judge Haight held, excessively broad under the Fourth Amendment. The purpose of the particularity requirement, the Supreme Court has held, "is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). Moreover, the Court has stated, in an oft-quoted passage, that the particularity requirement "makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). This Court, however, has recognized that these familiar words from *Marron* "ha[ve] not always been applied literally.... Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." *United States v. Young*, 745 F.2d 733, 759 (2d

Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985).

In *Andresen v. Maryland,* 427 U.S. 463, 479, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976), the Court considered whether a specific warrant was violative of the Fourth Amendment. The warrant at issue authorized a search for an "exhaustive list of particularly described documents," but also included an invitation to search for " 'other fruits, instrumentalities and evidence of crime at this [time] unknown.' " The Court upheld the validity of the warrant, which was issued as part of a prosecution for fraud in connection with a sale of land. The Court found that the presence of the detailed list saved the more expansive sections from invalidity, stating "[w]e think it clear from the context that the term 'crime' in the warrants refers only to the crime of false pretenses with respect to" the real estate in question. *Id.* at 480–81, 96 S.Ct. 2648–49. Here, in contrast, the warrant did not contain any "list of documents" or otherwise limiting language which tended to narrow its scope.

In *United States v. Dunloy,* 584 F.2d 6, 8 (2d Cir.1978), we upheld a warrant for a search of a bank safe deposit box that allowed the officials to seize " 'a quantity of cocaine, and additionally, all narcotic drug controlled substances, documents, records and other evidence of distribution and possession with intent to distribute narcotic controlled substances.' " We held that the warrant, under the "totality of the background facts, including the inability under the circumstances to provide a more precise description of the criminal instrumentalities that would be found in the box, was not impermissibly broad." *Id.* at 10. Judge Mansfield did note, however, that "the breath [sic] of the warrant's language was tempered by the extremely confined area authorized to be searched—one safe deposit box. The warrant was no blank check permitting agents to roam throughout an entire house, or even a room, but a narrowly restricted permit[.]" *Id.* at 10–11. The area at issue in the instant case, however, was not one small area, but rather an individual's residence, which, as *Dunloy* recognized, has always served as the focus of the Fourth Amendment's protections. Although the mere identification of the location to be searched and the crime or crimes to be investigated are tolerable in a warrant to search a safe deposit box, it does not follow that a similarly worded warrant should be permitted to conduct a "general, exploratory rummaging," *Coolidge, supra,* 403 U.S. at 467, 91 S.Ct. at 2038, in an individual's home.

A closer analogy is presented by *United States v. Young, supra.* There we upheld a warrant for the search of a private home which stated that the authorities could search for: "Quantities of heroin and other controlled substances, other chemical substances, equipment, utensils, paraphernalia, containers, money, notes, documents and papers *and other evidence* of a conspiracy to distribute and of the distribution and possession with intent to distribute of [sic] narcotic drug controlled substances ... [Emphasis added]." 745 F.2d at 758.

■ While the warrant in *Young* is certainly more similar to the one issued by Judge Fielo than those in the cases cited above, we believe *Young* and the instant case are distinguishable. First, the warrant in *Young* did list some specific items whereas the warrant before us listed none. In *Andresen, Dunloy* and *Young,* the courts upheld the presence of broad, "boilerplate" language in a warrant because it was preceded by a list of specific items to be sought by the police. The warrant here was, in contrast, *all* in general boilerplate terms, without either explicit or implicit limitation on the scope of the search. Second, as noted earlier, we stated in *Young* that "[c]ourts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." 745 F.2d at 759. While it can safely be said that the police here performed reasonably under the circumstances and collected all the "descriptive facts" they could in the middle of the night

at an early point in the investigation, they clearly did not insure that all the known facts were included in the warrant. The warrant only described the crimes—and gave no limitation whatsoever on the kind of evidence sought. In short, "the warrant left it entirely to the discretion of the officials conducting the search to decide what items," *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 325, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920 (1979), were to be seized, and thus was not permissible under the Fourth Amendment.

### III.

Our holding that the warrant was impermissibly broad does not, however, conclude our inquiry. The Government argues that even if the warrant is found to be overbroad, the evidence should be admissible under the reasonable reliance exception to the exclusionary rule recognized by the Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon,* the Supreme Court held that evidence obtained pursuant to a facially valid search warrant, later found to be invalid, was admissible if the executing officers acted in good faith and in objectively reasonable reliance on the warrant. The Supreme Court held in *Leon* that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Id.* at 919, 104 S.Ct. at 3419. Accordingly, *Leon* stated that, in applying the new rule, courts should "eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant," *id.* at 922 n. 23, 104 S.Ct. at 3421 n. 23, and that the inquiry should be "confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.*

Our task, then, is to determine whether a reasonably well-trained officer should have

known that Judge Fielo's warrant was impermissibly broad. The Supreme Court offered guidance for resolving this question in its first application of the *Leon* doctrine, *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). Based upon evidence obtained during a homicide investigation, a Boston police officer applied for a warrant authorizing a search of Sheppard's residence, using the only warrant application form available—a preprinted narcotics search warrant. The judge reviewing the officer's application, which included a supporting affidavit establishing probable cause, signed and dated the warrant after making several changes in its wording. Although the issuing judge "did not change the substantive portion of the warrant, which continued to authorize a search for controlled substances; nor did he alter the form so as to incorporate the affidavit," he assured the officer that "the warrant was sufficient authority in form and content to carry out the search as requested." *Id.* at 986, 104 S.Ct. at 3427 (footnote omitted). The Court held that the officer reasonably relied on the judge to make the obvious changes in the printed form to conform to the affidavit's particularization of the targeted items. The Fourth Amendment therefore did not require suppression of the evidence. The Court refused to hold "that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." *Id.* at 989–90, 104 S.Ct. at 3429.

■ We find that the doctrine enunciated in *Leon* and *Sheppard* has application here.[1] The record shows that the officers in this case made considerable efforts to comply with the dictates of the Fourth Amendment: they sought out a neutral magistrate; they tape-recorded the conversation with the magistrate to assure accuracy; they outlined the crime for the mag-

---

1. We note that the Eleventh Circuit is in agreement with our application of the reasonable reliance exception to a particularity violation, *see United States v. Accardo,* 749 F.2d 1477, 1980–81 (11th Cir.), *cert. denied,* —— U.S. ——,

106 S.Ct. 314, 88 L.Ed.2d 295 (1985), and that the First and Ninth Circuits disagree with us. *See United States v. Fuccillo,* 808 F.2d 173 (1st Cir.1987), and *United States v. Crozier,* 777 F.2d 1376, 1381–82 (9th Cir.1985).

istrate; they described the evidence that led them to the house in East Orange; the detective was placed under oath by Judge Fielo and swore to the truth of his assertions. What the officers failed to do was anticipate our holding today that the particularity clause of the Fourth Amendment prohibits the use of a catch-all description in a search warrant, unaccompanied by any list of particular items or any other limiting language. In October, 1981, when the police applied for the warrant at issue, the law was unsettled as to how particular the description of the articles to be seized must be in order to comply with the Fourth Amendment. The jurisdiction in which the officers were operating—the Third Circuit—had not spelled out the particularity requirement. This is the first case to address the issue in our court. As section II of this opinion illustrates, prior to our decision, the existing cases left considerble ambiguity as to the exact requirements of the particularity clause going far beyond the ambiguity inherent in every new application of the law.

In such a case, a reasonably well-trained police officer could not be expected to know that the warrant issued by Judge Fielo violated the Fourth Amendment. The exclusionary rule's deterrent function is not served by penalizing officers who rely upon the objectively reasonable legal conclusions of an issuing judge. We therefore disagree with Judge Haight's conclusion that the evidence should have been suppressed.[2]

The order of the District Court suppressing the fruits of the search of 223 Prospect Street, Apartment 1A, East Orange, New Jersey, is reversed.

---

2. Of course, our decision today means that, with respect to searches conducted hereafter, police officers may no longer invoke the reasonable-reliance exception to the exclusionary rule when they attempt to introduce as evidence the fruits of searches undertaken on the basis of warrants containing only a catch-all description of the property to be seized.