UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF PROPERTY LOCAT-
ED AT 18 PERKINS ROAD, WOOD-
BRIDGE, CONNECTICUT, With All
Appurtenances and Improvements
Thereon, Defendant.

Claim of Joyce SACHS, Shelton Savings
and Loan, and Kasden Fuel.

Civ. No. N–90–178 (TFGD).

United States District Court,
D. Connecticut.

Sept. 18, 1991.

Lauren McCurry, Leslie C. Ohta, Asst. U.S. Attys., New Haven, Conn., for plaintiff.

Thomas Healey, Shelton, Conn., for Shelton Sav. and Loan.

Jacob D. Zeldes, David P. Atkins, Adele V. Patterson, Zeldes, Needle & Cooper, Bridgeport, Conn., for Joyce Sachs.

Mary B. Androski, Ansonia, Conn., for Kasden Fuel.

## RULING ON MOTION TO SUPPRESS

DALY, District Judge.

Joyce Sachs, a claimant in the above-captioned forfeiture proceeding and owner of the defendant property, moves this Court to suppress the use as evidence of numerous items seized during the course of an alleged illegal search of that property. Claimant's argument is three-fold: 1) that the affidavit in support of the warrant authorizing the search of the defendant property did not establish probable cause for the search and seizure of particular items listed in the warrant; 2) that the warrant was overbroad, authorizing the search and seizure of generic "monies" when, in fact, the authorities had serial numbers of drug purchase money believed to be in the house; and 3) that the warrant was illegally executed in that certain non-contraband items were seized in the absence of judicial authorization. Claimant's motion, construed as a motion in limine,[1] is granted in part for the reasons set forth below.

## BACKGROUND

The instant motion arises out of the issuance and execution of a search warrant

---

1. *See United States v. Thirteen United Bank & Trust Prime Certificates,* No. H–87–986 (PCD) at 2, n. 1 (D.Conn. filed July 27, 1988) (similarly construing forfeiture claimants' motion to suppress as a motion in limine).

for 18 Perkins Street,[2] Woodbridge, Connecticut, premises identified in that warrant as "a single family, three story English Tudor style home, consisting of brick stucco, and wood with a satellite dish on the front lawn and a solarium on the right side and including a brown, 10′ X 8′ shed located in close proximity to the driveway of said residence." Exh. A to Gov't Mem. in Opp. (copy of the search warrant).[3] The warrant, supported by the affidavit of William S. Reiner, Jr., a special agent with the Federal Bureau of Investigation, was signed by a Judge of this court on the evening of April 5, 1990, and executed later that evening and into the morning of April 6, 1990. *See* Exh. 1 to Motion to Supp. (copy of evidence inventory form citing times of the search). It authorized search of the premises named for the following property: "cocaine, white powder substance, plastic bags, tin foil, scales, records of drug transaction and/or sales, telephone bills, proof of residence, packaging materials, cutting agents, record of assets, and monies, all of which constitute instrumentalities and/or evidence of criminal conduct." Exh. A to Mem. in Opp. Claimant objects to the introduction as evidence of all items seized pursuant to the April 5, 1990 warrant, and additionally challenges the admission of those items seized during the search which were not listed in the warrant. Claimant's arguments, organized by particular item(s), are discussed seriatim below.

### A. *Cocaine*

Claimant argues that the affidavit in support of the search warrant fails to support a finding of probable cause that cocaine would be found in the premises to be searched. Plaintiff counters with a string

of references from the affidavit, all of which combine, in its estimation, to leave the probable cause determination a constitutionally sound one. At least on this point on the record now before the Court, the claimant has the sounder position.

The Fourth Amendment to the United States Constitution provides, *inter alia,* that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. As the Supreme Court has explained, in iterating the obvious, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). Its existence must be determined by an analysis of "the totality-of-the-circumstances", *id.* at 238, 103 S.Ct. at 2332, and will be satisfied upon a showing of "probability, and not a prima facie showing, of criminal activity." *Id.* at 235, 103 S.Ct. at 2330; *see also United States v. Travisano,* 724 F.2d 341, 346 (2d Cir.1983) ("In sum, the applicable standard to be derived from these principles is that there be a fair probability that the premises will yield the objects specified in the search warrant") (citation omitted). Because the application for a search warrant is often drafted by law enforcement authorities " 'in the midst and haste of a criminal investigation,' the papers should be read practically and in a commonsense fashion." *Travisano,* 724 F.2d at 346 (quoting *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965)). The Court prefaces its review of the cocaine probable cause determination here with the additional observation

---

**2.** Although the warrant refers to "Perkins Street", as does the Verified Complaint of Forfeiture in this action, the Court construes the parties' recent use of "Perkins Road" in their pleadings as an acknowledgement that their initial appellation was an erroneous one. The Court has since confirmed that, in fact, there is no Perkins Street in Woodbridge, only a Perkins Road. The parties are advised that through the course of this Ruling, the Court shall refer only to Perkins Road.

**3.** The underlying forfeiture proceeding is one of five forfeiture actions stemming from the April 5–6, 1990 search, and Marvin Sachs' arrest on federal drug-related charges on April 5, 1990. *See* Exh. C, ¶¶ 9–10, to Verified Complaint of Forfeiture (April 6, 1990 Reiner Affidavit referencing Marvin Sachs' arrest). The remaining cases, all pending before this Court, are consolidated under the caption *United States v. $292,-770.94 in United States Currency,* Con.Civ. No. N–90268 (TFGD).

that, as a general matter, and in recognition of the fact that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," great deference shall be accorded the probable cause determination of a judicial officer. *See United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984); *see also Travisano*, 724 F.2d at 345.

The affidavit recites the following relevant information:

> A cooperating witness ("CW") of the Federal Bureau of Investigation ("FBI") advised investigators in this case that he has been purchasing cocaine from Marvin Sachs for a period of approximately (3) years. In this regard, on at least two occasions in the past (both of which were in the early part of his purchasing cocaine from Sachs), the CW purchased cocaine from Sachs at Sachs' residence located at 18 Perkins Street, Woodbridge, Connecticut. On one of the occasions, the CW actually entered Sachs' house and observed multiple kilograms of cocaine inside the residence. On the second occasion, Sachs brought the cocaine from his residence to the CW's car.

Exh. 2 to Motion to Supp. at ¶ 5.

Discussing a meeting between the CW and Marvin Sachs on April 4, 1990, the day before the search warrant application was made and approved, the affidavit states as follows:

> Prior to meeting with Sachs, the CW was met by federal agents at which time the CW and the CW's vehicle were searched and no drugs or monies were found. The CW was fitted with a transmitting device and was given a sum of United States currency (the serial numbers having been previously recorded) with which to make a purchase of cocaine from Marvin Sachs. The CW was surveilled going directly to 18 Perkins Street, Woodbridge, Connecticut.
>
> During this meeting, Marvin Sachs provided 3½ ounces of cocaine to the CW, and they discussed the sale of additional amounts of cocaine. Following this meeting, the CW met with Special

Federal Officer Robert Voets at a predetermined location. The CW gave SFO Robert Voets the cocaine that the CW had purchased from Marvin Sachs in exchange for the recorded government funds. The CW was again searched and no additional monies or drugs were found. The CW told Voets that Sachs entered a shed type building near the house and Sachs then came over to the CW's car and handed the CW approximately 3½ ounces of cocaine.

*Id.* at ¶¶ 19–20.

The affidavit further asserts that on April 5, 1990, at approximately 1:30 p.m.,

> while under FBI surveillance, the CW proceeded to 18 Perkins Street, ... and met with Marvin Sachs. Following the meeting, the CW advised your affiant that Sachs told him that he would be prepared later in the day to sell one kilogram of cocaine to the CW, and, if the CW wanted a second kilogram, Sachs could obtain it within minutes. This conversation was consensually recorded by the CW.

*Id.* at ¶ 21. Additionally, plaintiff has provided the Court with a copy of a FBI 302 form prepared by Special Agent Reiner and containing information allegedly verbally conveyed to the Judicial Officer prior to his signing of the search warrant. *See* Exh. A to Ohta Declaration in Supp. of Pltf's Motion for Extension of Time and Motion for Reconsid. According to this document, the Judge was verbally apprised of events that had occurred while the search warrant was being transported to his house for his consideration. He was allegedly informed, among other things, that Marvin Sachs had been surveilled driving from 18 Perkins Road to the Athenian Diner in New Haven, Connecticut for a pre-arranged meeting with the CW. As Agent Reiner's document explains, "[t]his meeting was monitored via a transmitter placed on the cooperating witness and surveillance agents overheard Sachs and the cooperating witness doing a deal for 1 kilogram of cocaine. The agents subsequently approached Sach's car and seized 1 kilogram of cocaine, placing Sachs under arrest." *Id.*

■ Having reviewed, *inter alia*, all relevant references to cocaine in the record before the Judicial Officer, the Court turns its deferential eye to a study of the propriety of his probable cause determination. The Court notes at the outset that as to other matters in the warrant, the plaintiff concedes that it failed to present probable cause to the Judicial Officer, *see infra* pp. 707–09 and that as to all matters, there is a complete absence in the affidavit of any indicia of the CW's reliability. Such an omission leaves suspect any unsubstantiated information received by Special Agent Reiner from the CW, including that information recited in paragraph five above (that the CW had, two to three years earlier, purchased cocaine from Mr. Sachs at 18 Perkins Road and that he had observed multiple kilograms of cocaine inside the home on one such occasion).[4] For the same reason, the Court is without any basis to rely on the CW's statement to Officer Voets that Mr. Sachs had "entered a shed type building near the house and Sachs then came over to the CW's car and handed the CW approximately 3½ ounces of cocaine." Exh. 2 to Motion to Supp. at ¶ 20. Even putting aside such unsubstantiated evidence, and relying instead on what can only be called untainted evidence in the affidavit, *see United States v. Brown*, 744 F.Supp. 558, 566 (S.D.N.Y.1990), the Court is, for the reasons stated below, without adequate grounds to ratify the probable cause determination made here.

Although, according to Special Agent Reiner's affidavit, the CW's phone calls and meetings with Mr. Sachs were frequently monitored, *see, e.g.*, Exh. 2 to Motion to Supp. at ¶¶ 6, 7, 9, 12–15, 17, 19, the affidavit never recites that any agent or other law enforcement officer actually overheard the exchanges said to have occurred between Mr. Sachs and the CW, or that any agent listened to them at some later date via recordings of the conversations. For example, the affidavit recounts that the CW was fitted with a transmitting device prior to his April 4, 1990 meeting with Sachs and goes on to state that "[d]uring this meeting, Marvin Sachs provided 3½ ounces of cocaine to the CW, and *they discussed* the sale of additional amounts of cocaine." *Id.* at ¶ 20 (emphasis added). Absent any reference to a tape of the alleged "discussion" or any indication that an agent overheard the conversation, the Court will not presume that this recounting by this CW is an accurate one. By way of contrast, Special Agent Reiner's 302 form recites that the alleged meeting between Mr. Sachs and the CW at the Athenian Diner "was monitored via a transmitter placed on the cooperating witness and surveillance agents *overheard* Sachs and the cooperating witness doing a deal for 1 kilogram of cocaine." Exh. A to Ohta Declaration (emphasis added).

The affidavit is plagued by other deficiencies. At first blush, the facts that the CW was searched before he went to the defendant property on April 4, 1990, and found to be without possession of cocaine, that he was surveilled going directly to that property, and that he possessed cocaine when met afterwards by Officer Voets, appear to create a probability that a cocaine transaction had transpired on the defendant property and that more cocaine could be found in either the shed or the home on April 5, 1990. Yet the affidavit does not attest that the CW was surveilled en route from 18 Perkins Road to the predetermined location for his meeting with Officer Voets, or even that he went directly from one location to the other, thus leaving open the possibility that the CW's comments to Voets were not truthful and that, in fact, the cocaine was procured on a detour between 18 Perkins Road and the

---

4. As claimant correctly points out, this information is, in any event, too stale to contribute to a finding of probable cause to search the residence on April 5, 1990. *See United States v. Thomas*, 757 F.2d 1359, 1367–68 (2d Cir.), *cert. denied sub nom. Wheelings v. United States*, 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985), *cert. denied sub nom. Rice v. United States*, 479 U.S. 818, 107 S.Ct. 78, 93 L.Ed.2d 34 (1986). Nor is there any demonstration in this record of criminal activity of such a protracted and continuous nature as to leave less significant this passage of time. *See United States v. Beltempo*, 675 F.2d 472, 477 (2d Cir.), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982).

predetermined location. The Court notes that any concerns in this regard might have been dispelled, as noted earlier, had the affidavit indicated that the conversational aspect of the sale was recorded by the transmitting device fitted on the CW, and subsequently heard or simultaneously overheard by agents on the case.

Special Agent's Reiner's 302 form, dictated a full week after the events in question, is of little assistance to plaintiff's case. Aside from the fact that the form is just that, a form and not a sworn affidavit, the fact that Mr. Sachs was surveilled driving from 18 Perkins Road to the Athenian Diner for a prearranged meeting with the CW, and that a kilogram of cocaine was subsequently found *in his car,* cannot legitimately support a finding of probable cause that cocaine would also be found in Mr. Sachs' home or in the adjoining brown shed.

Although the Court readily concedes that probable cause is not a game of certainties, it resists any effective characterization of that determination as a game of speculation. Only upon such speculation, however, can the warrant application in question, read in combination with Special Agent Reiner's 302 form, be said to create a fair probability that cocaine could be found on the defendant property. The affidavit consists solely of uncorroborated accounts of events from a cooperating witness whose reliability, or lack thereof, is never discussed, and of an incomplete trail of evidence that can only speculatively be said to support a finding of probable cause for cocaine in the property involved in this case. In view of the foregoing, the Court finds that portion of the warrant support-

ing a search for cocaine invalid for want of probable cause.

### B. *Monies*

■ As noted above, the search warrant in question includes "monies" among the items to be searched for on the defendant property. Claimant contends that this generic description is so overbroad as to amount to a Fourth Amendment violation.[5] She states that "[w]hile the affidavit does show that on April 4, 1990, Marvin Sachs received from the CW an unspecified amount of marked United States currency, it does not create probable cause for the seizure of all 'monies' found in the residence." Mem. in Supp. at 13. The Court finds claimant's overbreadth argument well-taken,[6] as also, apparently, does the plaintiff. Its memorandum in opposition makes no mention of this specific overbreadth argument, effectively conceding the point to claimant. When plaintiff does reference overbreadth deficiencies, it does so in only general fashion. *See* Mem. in Opp. at 19 ("[a]ssuming *arguendo* that the Warrant's description is determined to be overbroad and that such overbreadth cannot be cured by reference to the Affidavit," the good faith exception should apply); *see also* Claimant's Reply Brief at 6 n. 3 ("[t]he Government brief does not address the fact that the warrant permitted the search for and seizure of the overbroad category 'monies' ").[7]

The Court cannot dispose of this issue, however, without addressing the rule in some circuits that even if a warrant lacks particularity, an accompanying affidavit may nonetheless cure the deficiency if it is

---

5.  Claimant's argument has its roots in the Fourth Amendment requirement that a warrant describe with particularity "the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. The particularity requirement is designed to prevent a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971).

6.  *See United States v. Buck,* 813 F.2d 588, 593 (2d Cir.1987) (Lumbard, J.) (holding that the "particularity clause of the Fourth Amendment prohibits the use of a catch-all description in a

search warrant, unaccompanied by any list of particular items or any other limiting language"), *cert. denied,* 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987).

7.  The only other remotely relevant statement made by plaintiff in this regard is too broad-sweeping to pass for an actual response to claimant's argument. *See* Mem. in Opp. at 12 ("the search for and the seizure of cocaine and monies was plainly supported by probable cause *and particularity* thereby validating that portion of the Warrant") (emphasis added).

incorporated into the warrant by reference. *See, e.g., United States v. Harris*, 903 F.2d 770, 775 (10th Cir.1990); *United States v. Vaughn*, 830 F.2d 1185, 1186 (D.C.Cir.1987) ("the description on the face of the warrant must be read in conjunction with descriptions contained within the affidavit"); *United States v. Weinstein*, 762 F.2d 1522, 1531 (11th Cir.1985), *cert. denied*, 475 U.S. 1110, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986) ("[c]learly, an affidavit incorporated into a warrant by express reference and attached to and accompanying the warrant can cure ambiguity in the warrant itself") (citations omitted); *United States v. Jones*, No. SS 85 Cr. 1075 (CSH), 1986 WL 4549 (S.D.N.Y. April 10, 1986) (LEXIS, Genfed library, Dist file) ("[i]t is well-established that a search warrant must itself describe with particularity the things to be seized. Some courts have held that a facially deficient warrant may be cured by sufficiently detailed information in a supporting affidavit incorporated into the warrant") (citations omitted). As this Circuit has recognized, " '[a] warrant must be read as a whole.' " *United States v. Riley*, 906 F.2d 841, 850 (2d Cir.1990) (quoting *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir.1982), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983)).

In the case at bar, although the affidavit itself indicates that the CW "was given a sum of United States currency (the serial numbers having been previously recorded) with which to make a purchase of cocaine from Marvin Sachs," Exh. 2 to Motion to Supp. at ¶ 19, and although the affidavit is explicitly incorporated into the warrant, *see* Exh. A to Mem. in Opp., the affidavit reference cannot be read to lend any particularity to the term "monies" cited in the warrant itself. The affidavit neither recites the sum provided the CW, nor provides the previously recorded serial numbers. In short, it does nothing to cure the overbreadth deficiency in the warrant. *See United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir.1985) (the affidavit in support "contains neither a specific list nor a detailed description of the items to be seized. The affidavit does not provide the information needed to limit the general terms in the warrant.... the government's argument that the agents were somehow constructively guided by the affidavit in executing the warrant is unpersuasive").

Moreover, the fact that the serial numbers were previously recorded and presumably available leaves the government's failure all the more curious in the Court's mind. When judging questions of particularity, the Court is, of course, "concerned with realities of administration of criminal justice." *Moore v. United States*, 461 F.2d 1236, 1238 (D.C.Cir.1972). In this case, however, the Court is at a loss to explain how such "realities" could have prevented the law enforcement officers handling this investigation from making the seemingly minimal effort required to include the serial numbers, or even the sum of money, in the affidavit or in the inventory presumably prepared immediately after the search. As such, it is far less tolerant of this ambiguity in the warrant. *See United States v. Bright*, 630 F.2d 804, 812 (5th Cir.1980) (if "the police have a conclusive list of serial numbers so that other currency is not relevant to their inquiry and not properly subject to seizure, the listing of those numbers does give the party searched added protection. It is settled law that generic classifications in a warrant are acceptable only when a more precise description is not possible") (citation omitted).[8]

---

8. *See also United States v. Young*, 745 F.2d 733, 759 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985) ("[c]ourts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant") (citations omitted); *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir.) (stating that where "detailed particularization is impossible" generic language "suffices if it particularizes the types of items to be seized"), *cert. denied sub nom. Hoskins v. United States*, 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) (citations omitted); *United States v. Gomez–Soto*, 723 F.2d 649, 654 (9th Cir.) ("[a] general description may be acceptable in a warrant if a more precise description is not possible.... since the DEA sought articles it claims are typically found in the pos-

As scantily detailed as it is, the reference in the affidavit to the marked currency cannot possibly have served to limit the term "monies" in the warrant itself. The affidavit, as such, cannot save the overbreadth deficiency cited here by claimant. The Court agrees that at least with respect to "monies" then, the warrant fails the Fourth Amendment particularity requirement. *See Buck,* 813 F.2d at 593.[9]

■ The holding that the warrant was impermissibly broad does not, however, conclude the Court's inquiry. While, as noted above, plaintiff never explicitly references, let alone challenges, claimant's specific overbreadth argument, it does urge the good faith exception upon the Court as a means of overcoming any general overbreadth deficiencies in the warrant. States plaintiff, "[a]ssuming *arguendo* that the Warrant's description is determined to be overbroad and that such overbreadth cannot be cured by reference to the Affidavit, the exclusionary rule should nevertheless not be applied because the executing officers reasonably relied on the authority of the Warrant in conducting the search." Mem. in Opp. at 19 (citing *Leon* ).

Neither party has briefed the good faith issue to the Court's satisfaction. Both es-

sentially ignore what, in the Court's view, is the leading Second Circuit case in this area, *United States v. Buck,* 813 F.2d 588, wherein the Court of Appeals concluded that the warrant before it was impermissibly broad, holding as it did that "the particularity clause of the Fourth Amendment prohibits the use of a catch-all description in a search warrant, unaccompanied by any list of particular items or any other limiting language." *Id.* at 593. Because this holding was new to the Circuit, with the Court observing that "[t]his is the first case to address the issue in our court," it concluded that "a reasonably well-trained police officer could not be expected to know that the warrant issued by Judge Fielo violated the Fourth Amendment." *Id.* In finding the good faith exception applicable, the Court stated that the officers could not be faulted for having "failed to ... anticipate our holding today." Of critical relevance to the case at bar was the following admonition in the Court's concluding footnote:

Of course, our decision today means that, with respect to searches conducted hereafter, police officers may no longer invoke the reasonable-reliance exception to the exclusionary rule when they attempt to introduce as evidence the fruits

---

session of narcotics traffickers, [however,] the warrant could have named or described those particular articles." Because "the government could have drafted a warrant to get what it wanted without authorizing an exploratory general search," the overbroad warrant was invalid), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984); *cf. United States v. Dunloy,* 584 F.2d 6, 10 (2d Cir.1978) (broadly phrased warrant upheld where under the "totality of the background facts, including the inability under the circumstances to provide a more precise description of the criminal instrumentalities that would be found in the box, [the warrant] was not impermissibly broad"). *See generally United States v. Riley,* 906 F.2d 841, 846–55 (2d Cir.1990) (Weinstein, J., dissenting) (excellent general discussion of particularity requirement and specific discussion at pages 850–51 of necessity of including specificity where feasible).

9. The dangers of such overbreadth are, at least in this case, readily manifest upon a review of the evidence inventory form included as Exh. 1 in claimant's motion. Absent any limitation of the warrant term "monies," the agents conducting the search were effectively permitted by the warrant's terms, on this item alone, to rummage

through claimant's home for currencies of any denomination or serial numbers, with the sum to be searched for likewise unlimited. The agents seized $4,064 from the person of Rickie Sachs, claimant's son, at 9:40 p.m. on April 5, 1990, and apparently continued searching for currency, among other items, until 1:51 a.m. the next morning. At that time, they seized $5,000 in currency from claimant's pocket book. Over the course of this over-four hour search, the agents also seized $1,923 in currency from a trousers pocket in a third floor bedroom, and $44,850 in currency from a safe in a bedroom in the second floor. Were one to hypothesize that all other items in the warrant and any incriminating evidence in plain view was seized within the first hour of the search, and in the living room alone, the unlimited term "monies", standing alone, allowed the agents to rummage through the entire house in an unrestricted search for currency—this despite the fact that the prerecorded money given Marvin Sachs by the CW may very well have been the first $4,064 seized. The hypothetical illustrates the dangers presented by such overbreadth deficiencies, as well as the inability to cure them now on this record.

of searches undertaken on the basis of warrants containing only a catch-all description of the property to be seized. *Id.* at 593 n. 2. The message in the *Buck* footnote is entirely consistent with the Supreme Court's holding in *Leon* that the good faith exception may not be available, depending on the circumstances of the particular case, where a warrant is "so facially deficient—*i.e., in failing to particularize the place to be searched or the things to be seized*—that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923, 104 S.Ct. 3405 (emphasis added) (citation omitted). Nor is the Second Circuit alone in reaching the conclusion that the good faith exception may not apply where the warrant in question is plagued by overbreadth deficiencies. *See Twentieth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1989–90,* 79 Geo.L.J. 735 n. 666 ("[c]ourts commonly refuse to find good faith reliance when the warrant is too broadly worded or its terms so vague or unspecific that it fails to distinguish adequately between items that are evidence of a crime and innocent possessions") (citing, *inter alia,* the *Buck* decision). In view of the holding in *Buck,* and because the Court has not been presented any justification for the absence in either the affidavit or the warrant of either the sum or serial numbers at issue, nor been presented any satisfactory demonstration that the agents' reliance on the "monies" aspect of the warrant was reasonable and supported by deliberate efforts to ensure its sufficiency, the Court finds the good faith exception inapplicable. Accordingly, it concludes that plaintiff is precluded from introducing into evidence all currencies seized in the course of the search—specifically, inventory item numbers 1, 4, 7, and 18.

C. *White powder substance, plastic bags, tin foil, scales, records of drug transactions and/or sales, telephone bills, proof of residence, packaging materials, cutting agents and records of assets*

■ Claimant also moves to suppress the items underlined above, again on probable cause grounds. *See* Mem. in Supp. at 11 (stating that Special Agent Reiner's affidavit "does not even attempt to create probable cause to believe that these things existed or that they were evidence of a crime").[10] As a literal matter, claimant's statement is correct. Other than an introductory listing of these items and his statement that he believes the items are located in the 18 Perkins Road residence and the brown shed, Special Agent Reiner affords no specific mention to the items underlined above. Further, as claimant accurately points out, the Reiner affidavit "stands in stark contrast to the more common affidavit which informs the magistrate that the affiant's professional experience—either generally or with the particular suspect—has taught him to believe that the items to be searched for are associated with the criminal activity he has probable cause to believe is taking place in a particular location." Mem. in Supp. at 11–12 (citations omitted).

To the Court's surprise, plaintiff explicitly concedes this point with respect to the plastic bags, packaging materials and records of assets.[11] Reference the follow-

---

**10.** According to the evidence inventory form, and as corroborated by the plaintiff, the authorities executing the warrant did not seize any scales, records of drug transactions and/or sales, or cutting agents. *See* Exh. 1 to Motion to Supp.; Mem. in Opp. at 2 n. 2. Nor can the Court find reference in the inventory form to seized records of assets. Although at first glance it also appears as though no proof of residence was seized, the Court will construe the seized Marvin Sachs passports (inventory item # 11), at least for the purposes of this motion and subject to revision upon examination, as such proof of residence.

Because these items, never seized, logically cannot be offered into evidence as fruits of the search, the Court is at a loss to explain claimant's reference to them in this motion. The Court shall limit its discussion to the remaining items listed, the only ones physically capable of such introduction.

**11.** Moreover, in failing even to discuss the existence of probable cause as to tin foil, telephone bills or proof of residence, let alone to challenge claimant's argument as to the lack of probable cause for these items, plaintiff implicitly concedes the accuracy of claimant's assessment with regard to these items, as well.

Although claimant contends to the contrary, *see* Reply Mem. at 3, plaintiff does address the

ing passages from its memorandum in opposition:

1) "[t]he Government submits that the search warrant is valid and supported by probable cause *at least with respect to the cocaine and monies.*" Mem. in Opp. at 2 (emphasis added);

2) "[a]lthough drug traffickers ordinarily have packaging materials, records of assets and assets purchased with drug monies, and agents may anticipate discovering them when a drug warrant is executed, such general knowledge may not justify issuing a warrant to search a suspected home for such items." *id.* at 7;

3) "[t]he inclusion of plastic bags, packaging materials and records of assets in the search warrant was an unfortunate but entirely reasonable error. Based on common sense and years of experience, the federal agents had every reason to expect that such items would be located on the Premises but the Affidavit failed to describe evidence sufficiently to establish probable cause in a legal sense." *id.* at 8;

4) "[t]he fact that probable cause did not exist with respect to some items in the warrant should not make the entire warrant invalid." *id.;*

5) "[w]hile the plastic bags, packaging materials, and records of assets discovered by the federal agents may have been improperly seized under the Warrant since probable cause was not sufficient, the search for and seizure of cocaine and monies was plainly supported by probable cause and particularity thereby validating that portion of the Warrant." *id.* at 12.

*See also* Claimant's Reply Mem. at 3 ("[t]he Government concedes that the affidavit did not establish probable cause to search for and seize most of the items listed in the warrant: white powder substance, plastic bags, tin foil, scales, records of drug transaction and/or sales, telephone bills, proof of residence, packaging materials, cutting agents and records of assets").

In the face of such concessions by the very body that presumably directed and supervised completion of the affidavit and warrant application at issue here, this Court is without any legitimate basis to reach a contrary finding. Accordingly, it concludes that the warrant failed to establish probable cause to search for plastic bags, tin foil, telephone bills, proof of residence, and packaging materials.[12]

■ In view of the foregoing, the Court concludes that plaintiff cannot find resort in the good faith exception. Plaintiff's concession that there was no probable cause to support the inclusion of these items in the warrant amounts to an admission that reliance on the warrant by the Assistant United States Attorney or Attorneys involved in and overseeing the Sachs investigation could not have been objectively reasonable. In view of such a staggering admission, the good faith exception, embracing law enforcement officers as a whole, and not merely police officers and DEA or FBI agents, is inapplicable. *See Leon,* 468 U.S. at 922, 104 S.Ct. at 3420 ("the [law enforcement] officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be *objectively* reasonable") (emphasis added) (citation omitted).

■ Plaintiff contends that these items should nonetheless be admissible under the plain view doctrine, stating that "[a]lthough the plastic bags, packaging materials, and records of assets may not have been properly seized under the authority of

---

existence of probable cause to support a search of the defendant property for white powder substance. Mem. in Opp. at 5–6. This argument is, however, identical to its argument that the warrant application supported a finding of probable cause to search for cocaine, and one the Court has already found to be without merit.

12. The Court has earlier stated its conclusion that the warrant lacked probable cause to search for cocaine. At least on the facts of this case, that conclusion necessarily forecloses any finding of probable cause to search for white powder substance.

the valid portion of the Warrant, the plain view doctrine justifies and validates their seizure." Mem. in Opp. at 14. The Court cannot agree with plaintiff's position.[13]

Given its conclusion that plaintiff's reliance on at least portions of the search warrant was objectively unreasonable, the Court simply cannot, in good conscience, allow the admission of these items through another door. Plaintiff is, in any event, foreclosed from resort to the plain view doctrine. As the Supreme Court made plain in *Horton*, "[i]t is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place in which the evidence could be plainly viewed." *Id.* at 110 S.Ct. 2308. This Court has already, in some areas at the virtual behest of the plaintiff, found serious Fourth Amendment failings reaching the whole of the warrant application at issue. Allowing the admission of these items in spite of such findings would be to ignore the test enunciated in *Horton*, and tantamount to a message that the government need not suffer any consequence for its errors or transgressions. That this Court will not do.

Because the Court finds that the seizure of plastic bags, tin foil, telephone bills, proof of residence, and packaging materials runs afoul of the Fourth Amendment, inventory items 2, 6, 10 (plastic bags only), 11 and 17 (SNET records only) may not be introduced into evidence.

D. *Jewelry, gems, coins, safe deposit box keys, car key and miscellaneous records*

■■■ Claimant asserts, and the evidence inventory form confirms, that the agents executing the search warrant seized a number of items for which judicial authoriza-

tion had neither been sought nor granted.[14] Claimant argues that the warrantless seizure of these items stands in violation of the Fourth Amendment, thereby warranting their suppression as evidence. *See United States v. Matias*, 836 F.2d 744, 747 (2d Cir.1988) ("[a] search must be confined to the terms and limitations of the warrant authorizing it") (citation omitted). The Court need not dwell on plaintiff's rejoinder that these materials are admissible under the plain view doctrine. The items, seized from claimant's home and not from any warehouse, cannot, by any stretch, be said to possess an "immediately apparent" incriminating character. *Horton*, 110 S.Ct. at 2308.

Plaintiff alternatively argues that the jewelry, gems, coins, watches and monies here seized are admissible under the federal forfeiture laws. Plaintiff cites 21 U.S.C. § 881(b) for the proposition that such assets may be seized by federal agents without a warrant where the agents have probable cause to believe such assets are subject to forfeiture because they have been acquired as the result of drug trafficking activity. As claimant indicates, however, "[s]ection 881(b) merely permits seizure incident to a validly conducted search.... [t]he search incident to which a seizure under section 881 may occur must first pass muster under the fourth amendment." Claimant's Reply at 11–12 (citations omitted). Recent Second Circuit law suggests that claimant's view is a correct one. Evidence the following excerpt from the Court of Appeal's decision in *United States v. $37,780 in United States Currency*, 920 F.2d 159, 162 (2d Cir.1990) (emphasis added):

Thus, to seize the property at the airport properly, the agents, as representatives of the Attorney General, were re-

---

**13.** The Supreme Court has recently revisited the standards governing the plain view doctrine. In *Horton v. California*, —— U.S. ——, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (Stevens, J.), the Court held that in order for a warrantless seizure of an object in plain view to be valid, three conditions must be satisfied: 1) the officer must not have violated the Fourth Amendment in arriving at the place from which the object could be plainly viewed; 2) the object's incrimi-

nating character must be immediately apparent; and 3) the officer must have a lawful right of access to the object itself. *Id.* 110 S.Ct. at 2308.

**14.** Items specifically discussed by claimant, numbers 8, 9, 12, 16, 17, and 19 on the inventory form, are watches, an extensive collection of jewelry and gems, safe deposit keys, Toyota car key, and miscellaneous records.

quired by 21 U.S.C. § 881(b)(4) to have "probable cause to believe" that the money was "subject to civil forfeiture under this subchapter"—*i.e.* that it was drug-related in one of the senses described in § 881(a)(6). *The fourth amendment also required the government to have "probable cause" in order to seize the money from Hernandez.*

Elsewhere in the same opinion, the Court observes that the unconstitutionality of a seizure without judicial process under § 881(b), and without probable cause, "may at an appropriate time require suppression of some evidence under the exclusionary rule." *Id.* at 163; *see also United States v. Premises and Real Property at 4492 S. Livonia Road,* 889 F.2d 1258, 1265–66 (2d Cir.1989) ("[v]arious circuit courts have held that the illegal seizure of property, standing alone, will not immunize that property from forfeiture, *so long as impermissibly obtained evidence is not used in the forfeiture proceeding....* In this case, the unlawfulness of the seizure of Serafine's home ... would only preclude the government from introducing any evidence gained by its improper seizure....") (emphasis added) (citations omitted). In view of the case law just cited, the Court finds plaintiff's alternative forfeiture law argument without merit.

For the reasons set forth above, the Court concludes that the warrantless seizure of jewelry, gems, coins, safe deposit box keys, a car key and miscellaneous records from the defendant property was an unconstitutional one. Accordingly, those items, delineated as items number 8, 9 (the Parker fountain pen excepted), 12, 16, 17 (Toyota car key only) and 19 on the evidence inventory form, are precluded from admission as evidence.

As a final matter, the Court notes that while claimant states in her motion that she seeks the suppression of all items set forth in the inventory of items seized, she has afforded no discussion to a number of items in that inventory. Specifically, claimant ignores the following seized items: five pills, hyperdermic needle and plunger (item number 3); identification for Alvaro Torres (item number 5); one Parker fountain pen (item number 9); one piece of paper with phone number (item number 10); paperwork regarding horses (item number 14); and a cardboard box containing glassine bags (item number 15). The Court declines to afford claimant the drastic relief here sought—the preclusion of the admission of these items—on a mere general request to such effect. Accordingly, these items are deemed admissible in the absence of any specific discussion of the impropriety of such admission.

## CONCLUSION

For the reasons just stated, claimant's motion is GRANTED in part. Pursuant to this Ruling, the following items seized during the April 5–6, 1990 search of the premises at 18 Perkins Road shall be precluded from admission in proceedings relative to this case:

1) all currency (inventory items 1, 4, 7, and 18);

2) three plastic bags with white powdery substance (inventory item 2);

3) small plastic bag with tinfoil containing brown powdery substance (inventory item 6);

4) all bags, jewelry and coins listed in inventory item 8;

5) all watches, coins, and jewelry listed in inventory item 9;

6) plastic bags for packaging (inventory item 10);

7) two passports of Marvin Sachs (inventory item 11);

8) safe deposit keys (inventory item 12);

9) miscellaneous records (inventory items 16 and 19);

10) Toyota car key and SNET records (inventory item 17);

11) cocaine.

Still admissible in the wake of this Ruling are the following:

1) five pills, hyperdermic needle and plunger (inventory item 3);

2) identification for Alvaro Torres (inventory item 5);

3) Parker fountain pen (included in inventory item 9);

4) piece of paper with phone number (included in inventory item 10);

5) paperwork re: horses (inventory item 14); and

6) cardboard box containing glassine bags (inventory item 15).

SO ORDERED.